UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C. CUNNINGHAM,<br><br>                    Plaintiff,<br><br>        v.<br><br>M. MARTINEZ, et al.,<br><br>                    Defendants. | Case No. 1:19-cv-01508-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIM AGAINST DEFENDANT HARMAN FOR FAILURE TO PROTECT IN VIOLATION OF THE EIGHTH AMENDMENT AND ON PLAINTIFF'S CLAIM AGAINST DEFENDANT MARTINEZ FOR VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 12)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

L.C. Cunningham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this action filed on October 23, 2019.  Magistrate Judge Stanley A. Boone screened the complaint, found that it failed to state a cognizable claim for relief, and gave leave to amend on January 27, 2020.  (ECF No. 8).

1

Plaintiff filed his First Amended Complaint on March 10, 2020.  The Court screened Plaintiff's First Amended Complaint and found that Plaintiff stated a claim against Defendant Harman for Failure to Protect in violation of the Eighth Amendment and a claim against Defendant Martinez for violation of the Free Exercise Clause of the First Amendment.  (ECF No. 14).  The Court also found that Plaintiff failed to state any other cognizable claims.  (Id.).  The Court gave Plaintiff options as to how to move forward.  (Id. at 12).  On May 4, 2020, Plaintiff filed his response to the Court's screening order, stating that he wants to stand on his complaint.[1]  (ECF No. 16).

Accordingly, the Court issues these findings and recommendations to the district judge consistent with the screening order.  Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[1] In Plaintiff's response, Plaintiff appears to indicate both that he wants to proceed only on the claims the Court found cognizable and that he wants to stand on his First Amended Complaint.  Given that Plaintiff objects to the dismissal of at least one of his claims, the Court will treat Plaintiff's response as a decision to stand on his complaint.

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint:

On March 26, 2019, Plaintiff arrived at Building C-2, Cell 130L. While housed in cell 130L, Plaintiff was harassed, threatened, "noised," annoyed, irritated, and taunted by other inmates. This caused harm to Plaintiff's health and safety. Plaintiff is constantly being subjected to cruel taunts and harassment from other inmates in the tier, which is causing significant injuries and inflicting more pain causing Plaintiff to need more medical care.

Plaintiff informed Defendant Martinez about his medical condition, and the negative effects of this harassment. Plaintiff told Defendant Martinez that it was torture. He said the harassment is causing him to have high blood pressure and affecting his serious medical conditions, which include seizures, high blood pressure, and a past stroke. Defendant Martinez did not move Plaintiff from cell 130L.

On March 27, 2019, Plaintiff informed defendant Yerry that he was being harassed, threatened, and taunted while in his cell by other inmates, which was putting his health and safety in serious harm. Plaintiff told Defendant Yerry that he suffered from an anxiety disorder, which caused the taunting and irritation to become more of a pain and suffering hazard. Plaintiff told Defendant Yerry what negative and harmful effects it had on his mental

and physical health.  Defendant Yerry told Plaintiff that he would not move Plaintiff and he did not care.  Defendant Yerry also refused to allow Plaintiff to talk to a sergeant.

Plaintiff submitted a 602 appeal.  When interviewed by Correctional Sergeant M. Stane regarding Plaintiff's allegations about asking to speak to a sergeant, Defendant Yerry lied and told Sergeant Stane that he did not recall the incident.

Although Plaintiff was ordered to be removed from cell 130L on or around May 9, 2019, records show that Defendants Martinez and Yerry failed to move Plaintiff from May 9, 2019, until September 23, 2019.  They were not following their orders to move Plaintiff from the cell from which he was being constantly harassed, threatened, taunted, and tortured by other inmates.  This shows their deliberate indifference and their failure to protect Plaintiff's serious medical needs.  Finally, Plaintiff was forced to kick out his cell window to stop the infliction of torture and pain.

Plaintiff also alleges that, on March 26, 2019, on Plaintiff's arrival at building C-2, Cell 130L, Plaintiff suffered from serious medical conditions including seizures, high blood pressure, stomach pains, damaged esophagus and stomach muscles, balance difficulties, dizziness, problems walking, and problems with his rib-cage.  Although Plaintiff told both Defendants Martinez and Yerry of these serious medical conditions, they chose to leave Plaintiff confined to cell 130L, where he was constantly being tortured.  Plaintiff also suffers from a serious anxiety disorder, which caused his risk for injuries to become greater.  Defendants' failure to move Plaintiff led to Plaintiff becoming "a cripple."

On June 16, 2019, Defendant Martinez began withholding Plaintiff's (RMA) religious special diet in retaliation for Plaintiff filing inmate 602 grievance appeals.  On June 16, 2019, Plaintiff submitted a 602 appeal regarding his religious (RMA) meals being withheld by Defendant Martinez every other day and being replaced with a general population diet tray.  During the inmate appeal interview, Plaintiff was informed by the reviewer that at no time will a general population regular meal food tray be substituted in place of an RMA special religious diet tray.  When Defendant Martinez substituted Plaintiff's religious diet tray with a general population meal tray, Defendant Martinez violated Plaintiff's religious diet agreement.

Defendant Martinez withheld Plaintiff's religious diet meal trays every other day for a period of June 16, 2019 through September 23, 2019.

Additionally, Plaintiff alleges that Defendants Martinez and Yerry, along with other correctional officers, are showing Plaintiff's paperwork and labelling Plaintiff a "snitch," which is exposing Plaintiff to substantial risk of serious harm. Plaintiff is being threatened by other inmates because of his being labelled a "snitch" by defendants and other correctional officers.

On November 11, 2019, while housed in unit C-4, 107L, on the second day of Plaintiff's arrival in the unit, correctional officer Harman harassed Plaintiff over the tier and called Plaintiff a "snitch" in front of other inmates, which caused Plaintiff to be verbally threatened by other inmates.

On November 16, 2019, Plaintiff submitted a 602 appeal about the incident.

Defendants are having inmates threaten Plaintiff and giving information to inmates that Plaintiff is a snitch. Correctional officers are covering up what is really happening to Plaintiff in prison.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Deliberate Indifference to Serious Risk of Harm Based on Inmate Harassment

To establish a failure to protect claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim.  See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action).  However, verbal harassment may violate the constitution when it is "'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." Cox v. Kernan, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092).

Plaintiff alleges that he was kept in a cell despite being harassed, threatened, "noised," annoyed, irritated, and taunted by other inmates.  Plaintiff does not describe any specific instance of harassment, but it is clear that the harassment from other inmates was entirely verbal.  These allegations do not allege conditions that pose a substantial risk of serious harm under the legal standards described above, and thus there is no cognizable claim against Defendants failing to protect him from the verbal harassment of other inmates.  See Falla v. Patton, 2019 WL 2162867, at *2 (E.D. Cal., May 17, 2019) ("Plaintiff's allegations that Patton verbally harassed him and that defendants Plagman, Curry, Lanigan, and Rackley failed to intervene and stop the harassment [] fail to state viable claims for relief.").

### B. Failure to Protect Based on Calling Plaintiff a "Snitch"

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety.  Id. at 834.

"'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013).  The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837.

"Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

The Ninth Circuit has held that telling inmates that someone is a "snitch" with the intent of having an inmate killed by other inmates could sate a claim for a violation of the inmate's right to be protected from violence while in custody.  Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (upholding a failure to protect claim where Plaintiff "alleged that because he had petitioned prison and government officials for redress of his grievances, [Defendants] had conspired to label him a 'snitch' and thereby subject him to retaliation by inmates").  The Ninth Circuit has also denied a similar claim when the plaintiff did not allege he was actually subjected to retaliation by fellow inmates, nor that the defendants were aware that their statements exposed the plaintiff to substantial risk of serious harm.  Morgan v. MacDonald, 41 F.3d 1291, 1293-94 (9th Cir. 1994).

Plaintiff alleges that:

> "Defendants Martinez and Yerry along with other Correctional Officers are showing Plaintiff's personal paperwork and labling [sic] Plaintiff a 'snitch' which is exposing Plaintiff to substantial risk of serious harm.  Plaintiff are [sic] also being threatened by other inmates because of his being labeled a snitch by defendants and other c/o staff members.
>
> On November 11, 2019, while housed in C-4 107L on the second day of Plaintiff's arrival in the unit[,] Correctional Officer (c/o) Harman harassed Plaintiff over the tier and called Plaintiff a snitch in front of other inmates, which caused Plaintiff to be verbally threatened by other inmates.  On November 16, 2019, Plaintiff submitted a 602 appeal about the incident.  Defendants are having inmates threaten Plaintiff and informing inmates that Plaintiff is a snitch….
>
> Defendants Martinez and Yerry were aware and knew that Plaintiff was at a substantial risk of serious harm due to their actions in showing other inmates Plaintiff's paperwork and labeling him a 'snitch.'
>
> In addition, Plaintiff submitted an inmate 602 appeal grievance showing that he was receiving death threats by other inmates over the tier on December 10, 2019.

(ECF No. 12, pgs. 12-13) (footnote omitted)

The grievance Plaintiff attaches claims in part that "yesterday c/o HARMAN called me a snitch on the tier for everyone to hear." (Id. at 37). It does not mention Defendants Martinez or Yerry.

Construing these facts in favor of Plaintiff at this stage, the Court finds that Plaintiff has sufficiently alleged that Defendant Harman failed to protect him against other inmates based on the allegation that Defendant Harman called him a snitch and that other inmates issued death threats against him after this time.

The Court does not find a claim against Defendants Martinez or Yerry because Plaintiff's allegations are unclear about whether they called Plaintiff a snitch in front of other inmates, and whether inmates threatened him physically as a result of this. Although Plaintiff at times says that Defendants Martinez and Yerry did this, he also says "along with other correctional officers." Moreover, he only describes one specific incident by Defendant Harmon, and his grievance only refers to Defendant Harmon.[2]

### C. Failure to Provide Religious Meals[3]

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional

---

[2] The Court gave Plaintiff leave to amend so that he could cure these deficiencies. (ECF No. 14, p. 8). However, Plaintiff decided not to amend his complaint. (ECF No. 16).

[3] Plaintiff states that he is bringing this claim under the Eighth Amendment and the Fourteenth Amendment. However, as Plaintiff is alleging that he is being denied religious meals, the Court will analyze Plaintiff's claim under the First Amendment.

rights.'" Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" Id. (quoting O'Lone, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); see also Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

Additionally, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." Jones, 791 F.3d at 1031. "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 1031-32 (alterations in original) (citation and internal quotation marks omitted).

Plaintiff alleges that from June 16, 2019, until September 23, 2019, Defendant Martinez regularly deprived him of his religious meals. Based on these allegations, the Court finds that Plaintiff's claim against Defendant Martinez for violation of the Free Exercise Clause of the First Amendment should proceed past the screening stage.

### D. Retaliation

A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408

F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567

Plaintiff alleges that Defendant Martinez failed to provide Plaintiff with his religious meals in retaliation for Plaintiff filing grievances.  However, Plaintiff does not provide any factual allegations regarding anything Defendant Martinez did or said from which the Court could draw a reasonable inference that Defendant Martinez failed to provide Plaintiff with religious meals in retaliation for Plaintiff filing grievances.[4]  Accordingly, Plaintiff fails to state a retaliation claim.

### IV.     CONCLUSION AND RECOMMENDATIONS

The Court has screened the complaint and finds that it states a cognizable claim against Defendant Harman for Failure to Protect in violation of the Eighth Amendment and a cognizable claim against Defendant Martinez for violation of the Free Exercise Clause of the First Amendment.  The Court also finds that Plaintiff's complaint fails to state any other cognizable claims.

As Plaintiff was given leave to amend but chose to stand on his complaint, the Court does not recommend granting further leave to amend.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

---

[4] In Plaintiff's response to the Court's screening order (ECF No. 16), Plaintiff states that he filed a grievance regarding Defendant Martinez's failure to provide Plaintiff with his religious meals (Plaintiff also attaches a copy of the grievance).  Even if the Court were to consider this additional allegation, it does not change the analysis.  The fact that Plaintiff filed a grievance after he was deprived of religious meals does not show that he was deprived of religious meals in retaliation for filing grievances.

1. This case proceed on Plaintiff's claim against Defendant Harman for Failure to Protect in violation of the Eighth Amendment and on Plaintiff's claim against Defendant Martinez for violation of the Free Exercise Clause of the First Amendment; and

2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **May 5, 2020**           /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE