UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C. CUNNINGHAM, | Case No. 1:19-cv-01508-AWI-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THAT DEFENDANTS' MOTION TO STRIKE BE DENIED |
| v. | |
| M. MARTINEZ, et al., | |
| Defendants. | (ECF No. 86 & 96) |
| | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.    INTRODUCTION

L.C. Cunningham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case proceeds "on Plaintiff's claim against Defendant Harm[o]n[1] for failure to protect in violation of the Eighth Amendment and on Plaintiff's claim against Defendant Martinez for violation of the Free Exercise Clause of the First Amendment."  (ECF No. 25, p. 2).[2]

On July 26, 2021, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to properly exhaust his available administrative remedies as to both claims.  (ECF No. 86).  On September 27, 2021, Plaintiff filed his opposition.  (ECF No. 92).  On October 4, 2021, Defendants filed their reply.  (ECF No. 93).  On October 25, 2021, Plaintiff

---

[1] It appears that the proper spelling of this name is "Harmon."  (See, e.g., ECF No. 41).
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

1    filed an unauthorized surreply.  (ECF No. 95).  On October 28, 2021, Defendants filed a motion

2    to strike Plaintiff's unauthorized surreply.[3]  (ECF No. 96).

3         As to Plaintiff's failure to protect claim against defendant Harmon, the Court finds that

4    it is undisputed that Plaintiff received a decision from the final level of review on his

5    grievance[4] related to this claim, but he did not receive that decision until after filing his First

6    Amended Complaint.  Accordingly, the Court will recommend that summary judgment be

7    granted to defendant Harmon on his exhaustion defense, and that the claim be dismissed

8    without prejudice.

9         As to Plaintiff's Free Exercise Clause claim against defendant Martinez, the Court finds

10   that it is undisputed that Plaintiff did not receive a third level response to any grievance he filed

11   regarding this claim, and there is no evidence suggesting that the generally available

12   administrative remedies were unavailable to Plaintiff.  Moreover, the Court finds that Plaintiff's

13   voluntary withdrawal of his grievance at the first level of review did not exhaust available

14   administrative remedies.  Accordingly, the Court will recommend that summary judgment be

15   granted to defendant Martinez on his exhaustion defense.

16   **II.    SUMMARY OF CLAIMS**

17        As described above, this case is proceeding on Plaintiff's claim against defendant

18   Harmon for failure to protect in violation of the Eighth Amendment and on Plaintiff's claim

19   against defendant Martinez for violation of the Free Exercise Clause of the First Amendment.

20        Plaintiff's failure to protect claim is proceeding based on allegations that "Defendant

21   Harm[o]n called him a snitch and that other inmates issued death threats against him after this

22   time."  (ECF No. 18, p. 8; ECF No. 25, p. 2).  This occurred on or around November 11, 2019.

23   (ECF No. 12, pgs. 12 & 37).

24        Plaintiff's Free Exercise Clause claim is proceeding based on allegations "that from

25   June 16, 2019, until September 23, 2019, Defendant Martinez regularly deprived him of his

---

27   [3] As consideration of Plaintiff's unauthorized surreply does not change the result, the Court will
     recommend that Defendants' motion to strike Plaintiff's unauthorized surreply, which includes a request to
     substantively respond to the surreply, be denied as moot.
28   [4] A grievance is also referred to as an appeal.

2

religious meals." (ECF No. 18, p. 9; ECF No. 25, p. 2).

## III.   THE PARTIES' POSITIONS

### a.  Defendants' Motion (ECF No. 86)

Defendants filed a motion for summary judgment on July 26, 2021. (ECF No. 86).

Defendants argue that "[t]he Court should dismiss both claims because Cunningham did not exhaust available administrative remedies for any of them." (Id. at 5). "Cunningham submitted inmate grievances regarding some of the claims alleged in this action. However, Cunningham did not exhaust administrative remedies as to any of his claims before initiating this action or filing the first amended complaint." (Id. at 5-6).

"Cunningham initiated 25 grievances concerning various issues at KVSP between March 23, 2019 and March 10, 2020, which is the period from the first alleged civil rights violation in this case to the date Cunningham filed his First Amended Complaint. Out of these 25 grievances, only grievance numbers KVSP-19-02458, KVSP-19-04492, and KVSP-19-04493 are related to Cunningham's failure-to-protect and withholding-of-religious-meal claims in this lawsuit." (Id. at 9) (citations omitted).

### i. *Grievance Number KVSP-19-02458*

"Cunningham submitted grievance number KVSP-19-02458 for first-level review on June 16, 2019. In it, Cunningham complained that he was not getting his full issue of food in his lunches. He also complained that 'a lot of the time [his] (RMA) meals [were] being withheld.' For relief, Cunningham requested to receive his full lunch and 'RMA meals.' There is no reference in this grievance to Defendant Martinez withholding Cunningham's religious meals." (Id.) (alterations in original) (citations omitted).

"On June 20, 2019, the grievance was rejected at the first level of review under California Code of Regulations, section 3084.6(b)(3) and 3084.1(f), and returned to Cunningham, because he exceeded the allowable number of grievances in a 14 calendar-day period. Cunningham was advised in the rejection letter that he should take a corrective action and resubmit the appeal to the first-level review within 30 calendar days of the rejection. On July 1, 2019, Cunningham resubmitted the grievance to the first-level review. On July 9, 2019,

1   Cunningham withdrew the grievance.  Then, about seven months later, on February 24, 2020,

2   Cunningham resubmitted the grievance to the third-level reviewer in Sacramento.  On March

3   23, 2020, the third-level reviewer sent the grievance back to Cunningham, and to the first-level

4   reviewer, because Cunningham impermissibly bypassed the required lower level of review.  On

5   April 6, 2020—over five months after he filed this lawsuit and over a month after he filed his

6   First Amended Complaint—the first-level reviewer cancelled the grievance, under section

7   3084.6(c)(10), because it was resubmitted more than 30 calendar days after the original

8   rejection.  Cunningham did not appeal the cancellation decision.”  (ECF No. 86, pgs. 9-10)

9   (citations omitted).

10           ii.   *Grievance Numbers KVSP-19-04492 and KVSP-19-04493*

11       “Cunningham submitted grievance number KVSP-19-04492 for first-level review on

12   November 18, 2019.  In this grievance, Cunningham complained, among other things, that

13   Defendant Harm[o]n called him a snitch in a loud voice.  For relief, Cunningham requested to

14   ‘be treated respectfully, impartially, and fairly.’  First-level review was bypassed and the

15   appeal was reviewed, and partially granted, at the second level of review, in that an

16   investigation was conducted.  On January 13, 2020, the second-level reviewer determined that

17   staff did not violate CDCR policy.  In the second-level decision, Cunningham was advised that,

18   if he wished to exhaust administrative remedies, he must submit the grievance for third-level

19   review.”  (Id. at p. 10) (citations omitted).

20       “Dissatisfied with the second-level review response, Cunningham submitted the

21   grievance to third-level review on January 28, 2020.  On April 21, 2020—approximately five

22   months after Cunningham filed this lawsuit, and over a month after he filed his First Amended

23   Complaint—the third-level reviewer denied the grievance.”  (Id. at 10-11) (citations omitted).

24       “Cunningham submitted grievance number KVSP-19-04493 for first-level review on

25   November 19, 2019 (one day after he submitted grievance number KVSP-19-04492).  In this

26   grievance, Cunningham complained, among other things, that Defendant Harm[o]n called him

27   a ‘snitch on the tier for everyone to hear.’  On December 2, 2019—over a month after

28   Cunningham initiated this lawsuit—the grievance was rejected at the first level of review under

California Code of Regulations, section 3084.6(b)(3) and 3084.1(f), and returned to Cunningham because he exceeded the allowable number of grievances filed in a 14 calendar-day period. Cunningham was advised in the rejection letter that he should take the corrective action and resubmit the appeal to the first-level reviewer within 30 calendar days of the rejection. Cunningham did not resubmit grievance number KVSP-19-04493." (ECF No. 86, p. 11) (footnote and citations omitted).

### iii. *Plaintiff's Claim Against Defendant Harmon*

"Cunningham initiated this lawsuit on October 23, 2019, alleging, among other claims, that Defendants Martinez, Yerry, and other correctional staff called him a 'snitch' to turn other inmates against him. Cunningham filed two grievances that mentioned or complained of being called a snitch, grievance numbers KVSP-19-04492 and KVSP-19-04493. But both grievances were submitted several weeks *after* Cunningham initiated this lawsuit (KVSP-19-04492 on November 18, 2019 and KVSP-19-04493 on November 19, 2019), and they cannot satisfy the exhaustion requirement." (Id. at 13) (citations omitted).

"In his operative First Amended Complaint, which was filed on March 10, 2020, Cunningham repeated his allegations against Martinez and Yerry, and added that Defendant Harm[o]n called him a snitch on November 11, 2019, in front of other inmates. But, because they were not fully resolved until *after* March 20, 2020, Cunningham's grievances do not properly exhaust the claims in the operative complaint, either. Grievance number KVSP-19-04492 was not fully exhausted by an Office of Appeals decision until April 21, 2020. And grievance number KVSP-19-04493 was never fully exhausted because it was rejected at the first level of review." (Id.) (citations omitted).

### iv. *Plaintiff's Claim Against Defendant Martinez*

"In his original complaint, Cunningham alleged that Defendant Martinez withheld his special diet meals on September 23, 2019. In his First Amended Complaint, Cunningham revised his claim to state that Martinez regularly deprived him of his religious diet meals from June 16, 2019 through September 23, 2019. Cunningham filed one grievance that mentioned or complained about deprivation of religious meals, grievance number KVSP-19-02458. But

grievance number KVSP-19-02458 does not exhaust Cunningham's administrative remedies with respect to his religious-meals claim for four reasons." (Id. at 14).

"First, grievance number KVSP-19-02458 was cancelled as untimely on April 6, 2020, and therefore it was not exhausted through the final level of review." (Id.) (citations omitted).

"Second, even if grievance number KVSP-19-02458 was not cancelled, and was instead substantively decided, it would not have exhausted administrative remedies because Cunningham had already filed this lawsuit when the grievance was cancelled on April 6, 2020. The grievance was initially rejected on June 20, 2019, because Cunningham had exceeded the allowable number of grievances filed in a 14 calendar-day period.  But Cunningham was advised that he could resubmit the grievance to the first-level reviewer within 30 calendar days of the rejection.  On July 1, 2019, Cunningham resubmitted the grievance to the first-level review, as instructed, but then withdrew the grievance on July 9, 2019.  More than seven months after he withdrew the grievance, Cunningham resubmitted the withdrawn grievance to the third-level reviewer in Sacramento on February 24, 2020.  And, once the third-level reviewer sent the grievance to the first-level reviewer, the first-level review cancelled it as untimely.  The cancellation decision was on April 6, 2020.  Thus, even if the grievance was not cancelled, it would not have exhausted Cunningham's claims in his original complaint, which was filed on October 23, 2019, or the operative First Amended Complaint, which was filed on March 10, 2020." (Id. at 14-15) (citations omitted).

"Third, in grievance number KVSP-19-02458, although Cunningham stated that 'a lot of the time my (RMA) meals are being withheld,' Cunningham did not allege that he was deprived of religious diet meals from June 16, 2019, through September 23, 2019. Cunningham could not have complained that he was deprived of religious diet meals from June 17, 2019, through September 23, 2019, in a grievance that he submitted on June 16, 2019, because those alleged deprivations would not yet have occurred.  His grievance therefore neither raised nor exhausted a claim against any Defendant for deprivation of religious diet meals from June 17, 2019, through September 23, 2019." (Id. at 15) (citations omitted).

"Fourth, grievance number KVSP-19-02458 does not allege any wrongdoing by

Defendant Martinez.  It does not identify Martinez by name or position, or give any other description with which to identify him, as the exhaustion regulations require.  Nor does the grievance describe Martinez's involvement in the alleged violation of his rights, as § 3084.2(a)(3)-(4) requires."  (ECF No. 86, p. 15) (citations omitted).

### v. *Evidence*

In support of their motion, Defendants submit among other things: the declaration of A Leyva, the Inmate Appeals Coordinator at KVSP; the declaration of Howard E. Moseley, the Associate Director of the Office of the Appeals; a log of grievances filed by Plaintiff; grievances filed by Plaintiff; and responses to grievances filed by Plaintiff.

### b. Plaintiff's Opposition (ECF No. 92)

Plaintiff argues that he exhausted his available administrative remedies; that Defendants' declarations used to support their motion are not made on personal knowledge and do not show that A. Leyva is competent to testify on the matters stated; and that defense counsel is misleading the Court by not informing the Court of Plaintiff's full and complete exhaustion.  (ECF No. 92, p. 2).

### i. *Plaintiff's Claim Against Defendant Martinez*

On page five of his declaration, A. Leyva failed to give full and complete details regarding grievance number KVSP-19-02458.  (Id.).  A. Leyva failed to inform the Court that on July 9, 2019, Plaintiff's grievance was accepted at the first level of review, and during this time Plaintiff and the reviewer came to an agreement which resolved his appeal.  (Id. at 3). Only after coming to an agreement did Plaintiff withdraw his grievance.  (Id.).  The reviewer informed Plaintiff during the appeal interview that "at no time will a general population regular meal food tray be submitted in place of an RMA Special Religious Diet Tray."  (Id. at 4). Defense counsel also failed to bring this to the Court's attention.  (Id.).

As the appeal was resolved at the lower level, under California Code of Regulations, title 15, § 3084.7(d)(3), Plaintiff was not required to submit his appeal for third level review. \\\
\\\

7

(ECF No. 92, p. 3).  Pursuant to § 3084.6(c)(11),[5] the issue was resolved at the lower level of review.  (ECF No. 92, p. 4).  Additionally, Plaintiff had a right and an obligation to withdraw his appeal pursuant to this section.  (Id. at 6).  Moreover, § 3084.7(b) states that "[t]he second level is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level…."  (ECF No. 92, p. 5).

Therefore, Plaintiff exhausted his available administrative remedies with regard to defendant Martinez.  (Id.).

"In addition, defense counsel used declarations to support their motion which were not made entirely on personal knowledge, and to show that the declarants (A. Leyva, and Moseley) is competent to testify on the matters stated."  (Id. at 7) (errors in original).  Leyva and Moseley failed to provide the Court with complete and full explanations for the withdrawal of his grievance.  (Id.).  Defendants' declarations failed to inform the Court that Plaintiff came to an agreement with the first level reviewer, and in so doing exhausted his available administrative remedies.  (Id.).

Plaintiff also argues that he did describe the specific issues under appeal regarding defendant Martinez's involvement.  (Id. 8).  Pursuant to regulations, Plaintiff was only required to provide the information regarding defendant Martinez and his involvement if he knew it at the time, and he did not know it.  (Id.).

ii.  *Plaintiff's Claim Against Defendant Harmon*

As to his claim against defendant Harmon, Plaintiff agrees that he initially failed to fully exhaust his available administrative remedies.  (Id. at 12).  However, Plaintiff fully exhausted his administrative remedies via grievance number KVSP-19-04492 on April 21, 2020.  (Id. at 12-13).

Accordingly, Defendants' motion should be denied.  (Id. at 13).

\\\

\\\

---

[5] At the relevant time, § 3084.6(c)(11) stated: "An appeal may be cancelled [if] … [t]he issue under appeal has been resolved at a previous level."

iii.   *Evidence*

In support of his opposition, Plaintiff submits, among other things, a copy of grievance number KVSP-19-02458 and a copy of the third level decision for grievance number KVSP-19-04492.

c.   Defendant's Reply (ECF No. 93)

Defendants reiterate arguments that they made in their motion for summary judgment.

Defendants also argue that Cunningham's argument that he exhausted his claim against defendant Martinez fails.  "First, Cunningham did not provide any evidence (documentary or testimonial) showing that there was an agreement between himself and the first-level reviewer to resolve grievance number KVSP-19-02458.  Nor did Cunningham provide any first-level review decision granting his grievance.  The complete grievance records submitted to the Court as exhibits to Leyva's and Moseley's declarations show that there was no such agreement between Cunningham and the first-level reviewer, nor was there a first-level-review decision granting the grievance.  Besides, Cunningham's current claim that he 'came to an agreement with the reviewer at the First level review' seems to contradict his own statement in the grievance, that Cunningham requested that the first-level reviewer withdraw the grievance because he 'worked it out with the kitchen.'"  (ECF No. 93, p. 3) (citations omitted).

"Second, even if Cunningham resolved his grievance with the kitchen, it does not mean that he exhausted any claim against Martinez, who was not a member of the prison kitchen staff.  Nor does Cunningham's voluntary withdrawal of grievance number KVSP-19-02458 satisfy the exhaustion requirement under Cal. Code Regs. tit. 15, §§ 3084.1(a)–3084.7.  Courts in this and other districts of California have held that voluntary withdrawals of inmate grievances, without receiving a formal review at any level, do not exhaust administrative remedies."  (ECF No. 93, p. 3) (citations omitted).

"Third, the *Harvey* case on which Cunningham relies is distinguishable from this case." (Id. at 4).  In *Harvey*, "[t]he Ninth Circuit held that *Harvey* exhausted the administrative process when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction.  Unlike in *Harvey*, here there is no decision by prison officials at

9

the first, second, or third level of review granting Cunningham's grievance.  Rather, it is undisputed that Cunningham withdrew the grievance prior to any decision by the first-level reviewer.  Therefore, *Harvey* is distinguishable."  (ECF No. 93, p. 4) (citations omitted).

"Fourth, even if the Court were to hold that Cunningham's withdrawal of grievance number KVSP-19-02458, based on an alleged July 9, 2019 agreement with the kitchen staff, exhausted administrative remedies as to Cunningham's claims against Martinez (who was not a member of the kitchen staff), Cunningham was still required to file a grievance for any alleged violation of that agreement after July 9, 2019.  Cunningham did not file any such grievance. Thus, any alleged violation after the purported July 9, 2019, agreement with the kitchen is unexhausted."  (Id.) (citations omitted).

"Moreover, Cunningham's argument that Defendants' motion should be denied because the declarations supporting the motion were not made on personal knowledge is frivolous.  As clearly stated in the declarations, both Leyva and Moseley have personal knowledge of, and are familiar with, CDCR's policies and procedures concerning the processing of inmate grievances."  (Id. at 5).

"Similarly, Cunningham's argument that Defendants' motion should be denied because defense counsel mislead the Court by not informing it of the reason for Cunningham's withdrawal of grievance number KVSP-19-02458 is frivolous.  Defendants' motion for summary judgment contains all records of grievance number KVSP-19-02458 maintained by CDCR, including the page that contains Cunningham's request to the first-level reviewer to withdraw the grievance, stating that he 'worked it out with the kitchen.'  Defendants also stated in their moving papers, at least three times, that Cunningham withdrew grievance number KVSP-19-02458."  (Id.).

### d.  Plaintiff's Unauthorized Surreply (ECF No. 95)

As to Defendants' argument that he was required to file a grievance for actions that occurred after July 9, 2019, Plaintiff argues that he did so.  (ECF No. 95, pgs. 4-5).  On section F of grievance number KVSP-19-02458, he complained about defendant Martinez's wrongdoing.  (Id.).  This was dated July 29, 2019.  (Id. at 4).

1   Plaintiff also argues that both he and the reviewer signed the relevant section of

2   grievance number KVSP-19-02458 when it was withdrawn, and that this counts as a signed

3   response from the reviewer.  (Id. at 6-7).

4   Plaintiff also reiterates arguments he made in his opposition.

5   **IV.   DISCUSSION**

6   a.   <u>Legal Standards for Summary Judgment</u>

7   Summary judgment in favor of a party is appropriate when there "is no genuine dispute

8   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

9   P. 56(a); <u>Albino v. Baca</u> ("<u>Albino II</u>"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there

10   is a genuine dispute about material facts, summary judgment will not be granted.").  A party

11   asserting that a fact cannot be disputed must support the assertion by "citing to particular parts

12   of materials in the record, including depositions, documents, electronically stored information,

13   affidavits or declarations, stipulations (including those made for purposes of the motion only),

14   admissions, interrogatory answers, or other materials, or showing that the materials cited do not

15   establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

16   admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

17   A party moving for summary judgment "bears the initial responsibility of informing the

18   district court of the basis for its motion, and identifying those portions of 'the pleadings,

19   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20   any,' which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex</u>

21   <u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  If the moving party

22   moves for summary judgment on the basis that a material fact lacks any proof, the Court must

23   determine whether a fair-minded jury could reasonably find for the non-moving party.

24   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla

25   of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

26   which the jury could reasonably find for the plaintiff.").  "[A] complete failure of proof

27   concerning an essential element of the nonmoving party's case necessarily renders all other

28   facts immaterial."  <u>Celotex</u>, 477 U.S. at 322.  Additionally, "[a] summary judgment motion

cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

b. Legal Standards for Exhaustion of Administrative Remedies

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020) & Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)). See also Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that

"[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam).  The exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth v. Churner, 532 U.S. 731, 736, 741 (2001); see also Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.  The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.  The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."  Reyes, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

As discussed in Ross, 136 S.Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement.  The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner."  Id. at 1856.  The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819….
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use….  And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation…. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 1859-60.

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

     c.  Analysis

       i.  *Plaintiff's Objections to the Declarations of A. Leyva and Moseley*

To begin, the Court will address Plaintiff's challenge to the declarations of A. Leyva and Moseley. Plaintiff argues that Leyva and Moseley lack personal knowledge. Leyva stated, under penalty of perjury, that he is the "Inmate Appeals Coordinator at Kern Valley State Prison," and that his job includes "receiving, logging, screening, routing, and monitoring the disposition of non-healthcare related inmate appeals." (ECF No. 86-1, p. 1). Moseley stated, under penalty of perjury, that he is the "Associate Director of the Office of the Appeals (OOA)." (ECF No. 86-3, p. 1). "[T]he Associate Director of the OOA administers the offender (inmate and parolee) grievance and appeal process for the Department. Before [his] tenure as the Associate Director of the Office of Appeals, [Moseley] worked for over four years as the Chief Deputy General Counsel for the Department's Office of Legal Affairs and there became familiar with the offender grievance and appeal process for the Department." (Id. at 1-2). Thus, based on the undisputed facts, both of these individuals have knowledge of CDCR's grievance system.

Plaintiff may be arguing that Leyva and Moseley lack personal knowledge as to why Plaintiff withdrew his grievance, and this appears to be true. However, neither Leyva or Moseley claimed to have personal knowledge as to why Plaintiff withdrew his grievance. Instead, their declarations concern the processing of grievances and appeals in general, as well as the processing of Plaintiff's appeals. Leyva does testify that grievance number KVSP-19-02458 was withdrawn, but he does not testify as to why. (ECF No. 86-1, p. 5).

14

Thus, Plaintiff's objection to the declarations of Leyva and Moseley is overruled.[6]

        ii.   *Undisputed Facts*

The Court next turns to the undisputed facts.  The relevant facts in this case are undisputed:[7]

- Plaintiff received the decision from the third level of review on grievance number KVSP-19-04492 on April 21, 2020.  Defendants' Separate Statement of Undisputed Facts ("SSUF") 21.

- Grievance number KVSP-19-02458 was submitted for first level review on June 16, 2019.  SSUF 10.

- Grievance number KVSP-19-02458 was rejected on June 20, 2019.  SSUF 11.

- Grievance number KVSP-19-02458 was resubmitted on July 1, 2019.  SSUF 12.

- Grievance number KVSP-19-02458 was withdrawn on July 9, 2019.  SSUF 12.

- Plaintiff filed his original complaint on October 23, 2019.  (ECF No. 1).

- Plaintiff filed his First Amended Complaint on March 10, 2020.  (ECF No. 12).

As Plaintiff's objections to the declarations of Leyva and Moseley were overruled and Plaintiff submitted no evidence suggesting that the grievance process was not generally available, the Court also finds that it is undisputed that there was a generally available grievance process.   As discussed above, at the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level."  Reyes, 810 F.3d at 657 (citing Cal. Code Regs. tit. 15, § 3084.1(b) & Harvey, 605 F.3d at 683).  See also Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent.  The third level of review exhausts administrative remedies….").

---

[6] The Court also finds that defense counsel did not mislead the Court.  Defense counsel stated that grievance number KVSP-19-02458 was withdrawn, and did not represent, or misrepresent, why it was withdrawn.

[7] Plaintiff failed to respond to Defendants' Separate Statement of Undisputed Facts.  Moreover, Plaintiff's opposition does not dispute these facts.

iii.   *Plaintiff's Failure to Protect Claim Against Defendant Harmon*

The Court next turns to whether Plaintiff exhausted each of his claims.  The Court will first analyze whether Plaintiff exhausted his failure to protect claim against defendant Harmon.

New claims in an amended complaint need to be exhausted prior to the date the amended complaint is filed, not prior to the date the original complaint was filed.  Rhodes v. Robinson, 621 F.3d 1002, 1005-07 (9th Cir. 2010).  However, even assuming that Plaintiff's claim against defendant Harmon was first included in the First Amended Complaint, Plaintiff failed to exhaust this claim before filing his First Amended Complaint.  It is undisputed that Plaintiff filed his First Amended Complaint on March 10, 2020.  It is also undisputed that Plaintiff did not receive a decision from the third and final level of review on his grievance related to this claim, grievance number KVSP-19-04492, until April 21, 2020, which is over a month after Plaintiff filed his First Amended Complaint.

As Plaintiff was required to exhaust the claim before filing his First Amended Complaint, Plaintiff's claim against defendant Harmon should be dismissed for failure to exhaust.

The Court notes that this dismissal would be without prejudice, so Plaintiff may refile this claim.

iv.   *Plaintiff's Free Exercise Clause Claim Against Defendant Martinez*

Next, the Court will analyze whether Plaintiff exhausted his Free Exercise Clause claim against defendant Martinez.

It is undisputed that there was a generally available administrative remedy and that Plaintiff did not receive a response at the third and final level to any grievance he filed regarding his claim against defendant Martinez.

As it is undisputed "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino II, 747 F.3d at 1172.  However, Plaintiff did not submit sufficient evidence, or even

argue, that the generally available administrative remedies were unavailable to him.

Plaintiff does argue that he exhausted his claim against defendant Martinez when he voluntarily withdrew his grievance after resolving the issue with prison staff.  According to Plaintiff, the person who reviewed his grievance, who worked for kitchen staff, told him that "at no time will a general population regular meal food tray be submitted in place of an RMA Special Religious Diet Tray."  (ECF No. 92, p. 4).  Based on this statement, Plaintiff voluntarily withdrew his appeal.  Plaintiff relies on California Code of Regulations, title 15, § 3084.7(b), California Code of Regulations, title 15, § 3084.6(c)(11), and Harvey v. Jordan, 605 F.3d 681.

As to California Code of Regulations, title 15, § 3084.7(b), at the relevant time, it stated: "The second level is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level, or for which the first level is otherwise waived by these regulations."  This section does not apply because Plaintiff never received a decision from the first level of review.  Instead, he voluntarily withdrew his appeal before a first level decision.  As to California Code of Regulations, title 15, § 3084.6(c)(11), at the relevant time, this section stated: "An appeal may be cancelled [if] … [t]he issue under appeal has been resolved at a previous level."  Again, the appeal was not deemed resolved—instead it was voluntarily withdrawn.

As to Harvey v. Jordan, in Harvey, "[p]rison officials failed to hold a hearing on the [disciplinary] charge within the time allotted by prison rules."  605 F.3d at 683.  Plaintiff "filed a grievance complaining about the delay and requesting access to the videotape of the extraction."  Id.  "[P]rison officials granted the relief he requested, informing him in writing that a hearing would be provided and that he would be permitted to view the tape prior to the hearing.  The decision was labeled a partial grant of the grievance because Harvey had stated that in the alternative he requested that the charge be dismissed.  Five months later, Harvey complained that the hearing still had not been held and that he still had not been given the opportunity to view the tape.  The prison officials construed that complaint as an appeal of their prior decision, and rejected it as untimely."  Id.

The "Defendants argue[d] that Harvey should have appealed the February 23, 2005 decision granting him a hearing and access to the videotape." Id. at 685.  The Ninth Circuit found that this argument was without merit.  Id.  "An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies.  Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised."  Id.

However, Harvey is distinguishable from this case.  In Harvey, the plaintiff received a decision on his appeal, which granted the relief that he wanted.  Here, Plaintiff withdrew the grievance voluntarily without getting a formal resolution of his appeal.  Plaintiff's own withdrawal of his appeal does not constitute exhaustion of administrative remedies.

In addition to the difference between a formal grant of relief in the appeals process and a voluntary withdrawal of appeal based on a verbal agreement, the situation in this case is distinguishable from that in Harvey because here there is no evidence that Plaintiff obtained the relief he requested before he withdrew his appeal.  Plaintiff states that he withdrew his appeal because the reviewer told him that "at no time will a general population regular meal food tray be submitted in place of an RMA Special Religious Diet Tray."  (ECF No. 92, p. 4).  Even if true, this does not fully satisfy Plaintiff's complaint that defendant Martinez had been interfering with his receipt of religious meals.  As Defendants point out, the alleged agreement was with kitchen staff.  But defendant Martinez did not belong to kitchen staff, and there is no indication that kitchen staff agreed to do or say anything to defendant Martinez.  Additionally, this supposed promise does no more than state the prison policy that general meals should not be substituted for religious meals, a policy that allegedly had been violated, and continued to be violated, by defendant Martinez.  There is no evidence that a prison official agreed to grant Plaintiff's requested relief.  The reviewer did not agree to investigate the past deprivation of religious meals or promise corrective action going forward to ensure that Plaintiff received his religious meals.  Thus, even if someone from kitchen staff told Plaintiff that general meals should not be substituted for religious meals, this would not have resolved Plaintiff's issue because he was not receiving his religious meals despite the existence of this policy. Thus,

unlike in <u>Harvey</u>, there is no evidence that a prison official purported to grant Plaintiff's requested relief in response to Plaintiff's grievance, and <u>Harvey</u> is inapplicable here.  <u>See</u> <u>Harvey</u>, 605 F.3d at 686 ("In sum, we hold that Harvey exhausted the administrative process when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction.").

Finally, in his unauthorized surreply, Plaintiff argues that he received a signed response from his reviewer.  In support of this argument, Plaintiff cites to California Code of Regulations, title 15, § 3084.6(f).  However, this section does not support Plaintiff's argument that he received a signed response.  At the relevant time, section 3084.6(f) stated: "An appeal may be withdrawn by the appellant by requesting to have the processing stopped at any point up to receiving a signed response.  The request for the withdrawal shall identify the reason for the withdrawal in section H of the CDCR Form 602, Inmate/Parolee Appeal and shall be signed and dated by the appellant.  If there is an agreed upon relief noted in writing at the time of a withdrawal and the relief is not provided when and as promised, then the failure to provide the agreed upon relief may be appealed within 30 calendar days of the failure to grant the promised relief.  The withdrawal of an appeal does not preclude further administrative action by the department regarding the issue under appeal."  Section 3084.6(f).  As stated in this section, an inmate can only withdraw a grievance prior to receiving a signed response, and Plaintiff withdrew his grievance.  This suggests that Plaintiff did not receive a signed response.  Moreover, Plaintiff has not cited to any case law or regulations suggesting that a signed withdrawal is the same as receiving a signed response to a grievance.

Finally, the Court notes that section 3084.6(f) states that if the relief is not provided as promised, an inmate has thirty days to appeal the failure to provide the relief.  And, Defendants submitted evidence that Plaintiff did not resubmit the appeal until February 24, 2020 (more than 30 days after defendant Martinez allegedly withheld Plaintiff's religious meals), and that the appeal was eventually canceled as untimely.  (ECF No. 86-1, p. 5; ECF No. 86-2, pgs. 7-9). Plaintiff did not challenge Defendants' evidence or argue that he timely and properly appealed

the failure to provide the promised relief.[8]  Thus, section 3084.6(f) does not support Plaintiff's argument that his voluntary withdrawal of the grievance excused his exhaustion of available administrative remedies.

Accordingly, Plaintiff's claim against defendant Martinez should be dismissed for failure to exhaust available administrative remedies.  See Bontemps v. Salinas, 2013 WL 5773096, at *2 (E.D. Cal. Oct. 24, 2013) (holding that a plaintiff failed to exhaust where the plaintiff voluntarily withdrew the inmate appeal without receiving a formal review at any level); Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006) ("[P]roper exhaustion of administrative remedies … means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (citation and internal quotation marks omitted).

## V.    CONCLUSION AND RECOMMENDATIONS

As to Plaintiff's failure to protect claim against defendant Harmon, it is undisputed that Plaintiff received a decision from the final level of review on his grievance related to his claim against defendant Harmon, but he did not receive it until after filing his First Amended Complaint.  Thus, defendant Harmon is entitled to summary judgment on his exhaustion defense.

As to Plaintiff's Free Exercise Clause claim against defendant Martinez, the Court finds that it is undisputed that Plaintiff did not receive a third level response to any grievance he filed regarding this claim, and there is no evidence suggesting that the generally available administrative remedies were unavailable to Plaintiff.  Moreover, the Court finds that Plaintiff's voluntary withdrawal of his grievance at the first level of review did not exahust available administrative remedies.  Thus, defendant Martinez is entitled to summary judgment on his exhaustion defense.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

---

[8] According to Plaintiff, in grievance number KVSP-19-02458, Plaintiff did fill out Section F, stating that "the agreement was not keep by by prison officials.  My religious meals are still being withheld by my Floor Staff M. Martinez."  (ECF No. 95, p. 12) (errors in original).  While this section in the grievance provided by Plaintiff is dated July 29, 2019 (id.), Plaintiff has not argued that he properly and timely resubmitted the grievance but that it was not properly processed or submitted sufficient evidence to create a genuine dispute of material fact as to this issue.

1. Defendants' motion to strike Plaintiff's unauthorized surreply be denied as moot;

2. Defendants' motion for summary judgment be granted; and

3. This action be DISMISSED without prejudice because Plaintiff failed to exhaust his available administrative remedies before filing this action.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __October 29, 2021__                    /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE

21